IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

DELANDO WILSON AND MICHAEL                              PLAINTIFFS
MERCHANT

V.                                                      NO: 4:22CV64-GHD-DAS

THE CITY OF GREENVILLE,
MISSISSIPPI, TASHA BANKS, JAMES
WILSON, SR., LURANN THOMAS-
KINGDOM, LOIS HAWKINS, VERNON
GREENLEE, AL BROCK, AMELIA
WICKS, DANNIE GRAISE, MARCUS
TURNER, AND ERRICK SIMMONS                              DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is the Defendants' City of Greenville, Mississippi, Errick Simmons, Tasha Banks, James Wilson, Sr., Lurann Thomas-Kingdom, Lois Hawkins, Vernon Greenlee, Al Brock, Amelia Wicks, Dannie Graise, and Marcus Turner's Motion for Judgment on the Pleadings [53]. Plaintiffs Delando Wilson and Michael Merchant have responded in opposition and upon due consideration of the motion and applicable authority, the Court hereby grants in part and denies in part Defendants' Motion for Judgment on the Pleadings. [53].

### Factual and Procedural Background

Plaintiffs Wilson and Merchant were employed as the City of Greenville, Mississippi's police chief and assistant police chief, respectively, from 2015 until 2021. Both Plaintiffs began their employment for the City of Greenville as police officers in 1999. Defendant Tasha Banks was elected to the Greenville city council as a councilwoman for Ward 5 in 2017. According to the complaint, Defendant Banks routinely made sexual and/or sexually charged comments toward Defendant Wilson. Wilson further alleges that Defendant Banks would routinely question the relationship between Plaintiff Wilson and Plaintiff Merchant, insinuating or stating that they were

1

gay and in a relationship with each other. The complaint also alleges that Plaintiff Wilson and Plaintiff Merchant were informed that Defendant Banks was "coming for" them, and that Defendant Banks told Plaintiff Wilson in 2020 that if he "got rid of Merchant" he would be safe. Plaintiff Wilson contends that he had no issue with Plaintiff Merchant and would not encourage or participate in attempting to terminate Merchant's employment.

The complaint alleges that the harassment continued concerning the Plaintiffs sexual orientation rumors and that in 2021, Defendant Mayor Simmons and the Defendant Board Members began pressuring Plaintiff Wilson to resign. Plaintiff Wilson contends that during a January 5, 2021, board meeting he stated that he was "considering resigning," but no action was ever taken on his part to actually do so and that he continued his job duties. Later on January 19, 2021, Plaintiff Wilson expressed that he was in fact not resigning from his position. Plaintiff Wilson states that the Defendants then began fabricating his termination, manufacturing documents that showed he had resigned on January 5, 2021, and then attempted to rescind his resignation on January 19, 2021.

Plaintiff Merchant alleges that after these events, he was instructed to call Defendant Mayor Simmons and that he was informed during the call that its purpose was to discuss his "exit date." Plaintiff Merchant alleges that there was never any mention of him leaving the department and that he had no intention of doing so. After this phone call, both Plaintiffs filed EEOC charges and provided the Defendants with a copy on the same day. On February 1, 2021, Plaintiff Wilson was instructed to clear his office and Plaintiff Merchant states that he was informed that he would be interim chief "for now." On February 3, 2021, Defendant Graise was appointed to be the interim chief by the board, replacing Plaintiff Merchant.

2

Plaintiff Merchant states that he was mistreated and harassed by Defendant Dannie Graise and that this led to medical issues. Plaintiff Merchant alleges that he suffered elevated blood pressure, depression, and anxiety that required medical treatment and FMLA leave. While on FMLA leave, Plaintiff Merchant alleges that he was not notified of his rights under the FMLA after taking leave on June 30, 2021, and that he was replaced on October 5, 2021. Plaintiff Merchant states that he was forced to resign after this as there was no comparable position to return to within the police department.

## Standard of Review

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is governed by the same standards as a Rule 12(b)(6) motion. *See Brown v. CitiMortgage, Inc.*, 472 Fed. App'x. 302, 303 (5th Cir. 2012) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)). "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 509–10 (1990)).

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

*Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

### Discussion

Plaintiffs have asserted eleven total claims against the Defendants, and the Defendants have currently motioned for judgment on the pleadings as to each of the eleven claims. The Court will address each claim in turn.

Defendants first assert that the Plaintiffs' complaint amounts to a "shotgun complaint" which should warrant dismissal as shotgun complaints are prohibited by the Federal Rules of Civil Procedure. Shotgun pleadings can be characterized as complaints "contain[ing] several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where

most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir.2002); see also *Bates v. Laminack*, 938 F.Supp.2d 649, 666 (S.D.Tex.2013) ("shotgun pleadings ... incorporate antecedent allegations by reference into new allegations") (internal quotation marks omitted). Here, Plaintiffs' complaint does this, as each count incorporates by reference the previous allegations leading to Count Eleven to incorporate paragraphs 1-286 by reference.

"[Q]uintessential" shotgun pleadings also fail to distinguish between the actions of named defendants. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir.2001). Defendants allege that Plaintiffs' complaint does this; however, the Court finds that each Defendants' alleged responsibility for each count is sufficiently described. The allegations could certainly be clearer, but this does not prevent the Court from being able to decipher which claims are being asserted against which defendants. While the Plaintiffs' complaint contains some elements of a shotgun complaint, the Court finds that, overall, the complaint does not constitute a shotgun complaint, and therefore the Court will not dismiss the complaint on that basis nor mandate that the plaintiffs file another amended complaint.

## I.  Count 1 – Title VII sexual harassment / sexual orientation harassment

Plaintiffs first assert a claim of Title VII sexual harassment hostile work environment, specifically alleging that they were both harassed due to the Defendants' perception of the Plaintiffs' sexual orientations and that Plaintiff Wilson was sexually harassed by Defendant Banks.

Defendants first assert that Plaintiffs' claim was not timely exhausted, as to bring a claim under Title VII, the Plaintiffs were required to exhaust the claims by filing a charge with the EEOC within 180 days of the alleged "unlawful employment practice." 42 U.S.C. § 2000e- 5(e)(1). The

Plaintiffs have asserted that the last date of Defendant Banks' sexual harassment was on October 5, 2020, which would place the 180-day filing deadline on April 3, 2021. Plaintiffs' charges were filed on January 29, 2021, within the 180-day deadline. Further, a plaintiff pursuing a hostile work environment claim need only file the EEOC Charge within 180 days of a single act which makes up part of the claim. *Goree v. City of Verona*, Civil Action No. 1:17-CV-93-SA-DAS, Pg. 9 (N.D. Miss. 2021). The continuing violation doctrine theory permits the Court to consider the allegations of the Defendants' continuous pattern of sexual harassment when determining the timeliness of the claim. Given the timing of the last allegation of sexual harassment and the alleged pattern of sexual harassment, the Court finds the Plaintiffs' sexual harassment hostile work environment claims to be timely.

To establish a hostile work environment claim under Title VII, Plaintiffs must show: "(1) [they are] a member of a protected group; (2) [they are] subjected to unwelcome harassment; (3) the harassment was based on [their] membership in a protected class; (4) the harassment affected a term, condition, or privilege of [their] employment; and (5) [their] employer knew or should have known of the harassment and failed to take prompt remedial action." *Gibson v. Verizon Servs. Org.*, 498 F.App'x 391, 394 (5th Cir. 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

Plaintiffs have sufficiently alleged the first, third, and fifth elements of a Title VII hostile work environment claim, which the Defendants do not appear to dispute. Plaintiffs allege they are a member of a protected group based on their sex and their filing of an EEOC charge. Plaintiffs have also alleged that they were both subject to unwelcome harassment from Defendant Banks. Further, Plaintiffs have alleged that the sexual harassment they experienced was on the basis of their sex or perceived sexual orientation.

6

Defendants appear to take issue with the second and fourth element as to the Plaintiffs, asserting that the Plaintiffs have not alleged sufficiently severe sexual harassment or that the harassment affected a term, condition, or privilege of their employment.

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez v. Yellow Transp., Inc.* 670 F. 3d 644, 651 (5th Cir. 2012). To determine whether an environment was objectively offensive, courts consider the totality of the circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, whether it unreasonably interferes with the employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

When reviewing the complaint, the Court notes several instances of alleged sexual harassment based on Plaintiff Wilson's sex and sexual orientation. Plaintiff Wilson alleges that there were multiple instances where Defendant Banks made sexually charged comments toward him regarding his attractiveness and commented about how they would be having sex if Plaintiff Wilson was not married. Plaintiff Wilson further states that these comments would come from Defendant Banks not only at work but that Banks would also call and harass him. Plaintiff Wilson also states that more comments were also made, both at work, in public, and in private, about his rumored sexual orientation and an alleged homosexual relationship with Plaintiff Merchant. The Court finds that Plaintiff Wilson has sufficiently alleged that he was subject to unwelcome harassment based on his sex or sexual orientation.

Plaintiff Merchant has also sufficiently alleged a sufficiently offensive work environment. The Complaint states that Plaintiff Merchant's sexual orientation was questioned multiple times by Defendant Banks and that Defendant Banks allegedly discussed Merchant's sexual orientation on

numerous occasions, both in and out of the presence of Plaintiff Merchant. The Court need not conduct a summary judgment analysis at this stage concerning the severity of the alleged sexual orientation harassment of Plaintiff Merchant, thus Plaintiff Merchant at this state of proceedings has sufficiently alleged a sufficiently severe work environment.

The Court will next address the fourth element, that the harassment affected a term, condition, or privilege of [their] employment, as to both Plaintiffs. Plaintiffs allege that Plaintiff Wilson was told that "getting rid of Merchant" would allow Plaintiff Wilson to be safe and keep his employment. After multiple instances of reporting the sexual orientation harassment, the Complaint alleges that both Plaintiffs' jobs were in jeopardy as they were told that Defendant Banks was "coming hard for [Wilson] and Merchant." With the sexual orientation of both Plaintiffs continuously coming into question at their job, Plaintiff Wilson was put in the position to either let both he and Merchant potentially lose their jobs or fire Merchant to save his own job. Plaintiff Wilson refused to terminate Plaintiff Merchant, and later both Plaintiffs filed EEOC Charges asserting broadly both sex and sexual orientation harassment. Both Plaintiffs allege they were soon after either terminated or prevented from returning to their position, and given the Plaintiffs' burden of establishing a plausible claim at this stage, the Court finds that the Plaintiffs have sufficiently alleged that the harassment affected a term, condition, or privilege of their employment.

While the fifth element, that the employer knew or should have known of the harassment and failed to take prompt action, is not contested, the Court acknowledges that the Complaint offers multiple instances of the City of Greenville being notified of the alleged sexual and/or sexual orientation harassment. Further, Plaintiffs state that not only was the City of Greenville aware of the harassment, but that the City refused to take any action to stop the harassment or prevent further

harassment. Thus, Defendants' motion for judgment on the pleadings as to Plaintiffs' claims of Title VII sexual harassment based on hostile work environment is denied.

## II.    Count 2 - Title VII Harassment / Retaliatory Hostile Work Environment

Plaintiffs next assert a claim of retaliatory hostile work environment against Defendant City of Greenville. The Fifth Circuit has not explicitly decided whether "retaliatory hostile work environment" is a cause of action, however, both district courts and the Fifth Circuit have addressed retaliatory hostile work environment claims in substance. Using the modified factors for a retaliatory hostile work environment claim, a plaintiff must show: (1) he engaged in protected conduct, (2) unwelcome harassment, (3) causal connection between the harassment and protected activity, (4) harassment that affects a term, condition, or privilege of employment, and (5) the defendant knew or should have known of the harassment yet failed to take prompt remedial action. *McCorvey v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 2016 WL 8904949, at *11 (W.D. Tex. Dec. 21, 2016).

Plaintiffs have pled sufficient facts to show that they engaged in protected activity, as both Plaintiffs filed an EEOC charge alleging sexual or sexual orientation harassment, and filing an EEOC claim is protected activity. *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 367 (5th Cir.2013).

Plaintiffs must also plead facts that show unwelcome harassment, and further, Plaintiffs must also allege a causal connection between the harassment and the protected activity. Plaintiff Wilson states that one business day after filing his EEOC claim he was effectively told that he was "resigning" against his will. Further, Plaintiff Wilson alleges that three days after filing his EEOC complaint, he was told that the Sheriff's Department would be sent if he attempted to show up for work. Plaintiff Merchant has also alleged that his employment with the City of Greenville

deteriorated after his EEOC claim was filed. Merchant states that his job duties were reduced over a period of time, preventing him from performing vital aspects of his position. Plaintiff Merchant lastly alleges that he was forced to involuntary resign when his position was given to Defendant Marcus Turner while Plaintiff Merchant still held the position. Further, both Plaintiffs have sufficiently pled facts that show the alleged retaliation affected a term, condition, or privilege of their employment and that Defendant City of Greenville was aware of the retaliatory hostile work environment. Defendants' motion for judgment on the pleadings as to the Plaintiffs' retaliatory hostile work environment claims is denied.

### III.    Count 3 - Title VII Retaliation

"Title VII imposes liability for unlawful retaliation where (1) the employee engaged in activity protected by Title VII, (2) the employer took adverse employment action against the employee, and (3) a causal connection exists between that protected activity and the adverse employment action." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998). "An employee has engaged in protected activity when []he has (2) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Id.*

The Court acknowledges the existing question of whether refusal of sexual advances may rise to the level of protected activity as it concerns Plaintiff Wilson's retaliation claim. Refusal of sexual advances, alone, is not "opposition" to constitute protected activity for purposes of a retaliation claim. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 389 (5th Cir. 2007). However, the context of the alleged sexual advances and the circumstances may overall constitute a protected activity. As previously discussed, Plaintiff Wilson not only refused Defendant Banks'

sexual advances, but reported them as well so that Defendant City of Greenville was aware. It is alleged that Plaintiff Wilson was told by the Defendant that the sexual harassment would stop if he just had sex with Defendant Banks. Following Defendant Wilson's refusal of the sexual advances and reporting thereof, Plaintiff Wilson was told that Defendant Banks was coming after him and Defendant Merchant. Soon after these events, Plaintiff Wilson has alleged that he was essentially discharged from his position and the records were created to show that he resigned instead, which he insists is false.

Further, Plaintiff Wilson and Plaintiff Merchant engaged in the protected activity of filing an EEOC charge. As discussed, after this charge was filed by each plaintiff, the complaint goes into detail about the types of retaliation each plaintiff went through as a result of the EEOC charge. Plaintiff Wilson alleges that he was immediately forced to resign, which he contends was essentially termination. Plaintiff Merchant, as the Court has previously covered, later had responsibilities of his job removed from his position. It is further stated that the Defendant City of Greenville placed a supervisor in charge of Plaintiff Merchant who was known to have an agenda against this plaintiff and his position was later given to someone else while still occupied by Merchant. Plaintiffs' pleadings are sufficient to maintain the Title VII retaliation claims at this juncture.

## IV.    Count 4 – Fourteenth Amendment Due Process Under Section 1983

Plaintiffs next allege that their due process rights under the fourteenth amendment were violated both substantively and procedurally. Procedural due process, on the one hand, focuses on notice and an opportunity to be heard. See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976). Substantive due process, on the other hand, aims to prevent "governmental power from being 'used

for purposes of oppression[.]'" See, e.g., *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citation omitted).

Due process claims require proof that a protected property interest has been deprived. See, e.g., *Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."). To succeed with a claim based on substantive due process in the public employment context, the plaintiffs must demonstrate that they had a clearly established property interest in their employment. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993). A property interest in employment may be created by ordinance or implied contract. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). "Property interests are created and their dimensions are defined by existing rules or understandings under state law." *Williams v. Texas Tech Univ. Health Sciences Ctr.*, 6 F.3d 290, 293 (5th Cir.1993). Because Mississippi is an employment-at-will state, employment contracts are terminable at will by either party absent a specific contract to the contrary. See *Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987).

Plaintiffs have alleged they were both removed from their positions wrongfully and not given notice and opportunity to be heard, thus violating their rights to life, liberty, and property under the fourteenth amendment. Plaintiffs cite to the employee handbook and the City's ordinance and employee manual as the source of their property rights, and both were included with the Complaint, thus allowing the Court to consider them without converting this motion into a motion for summary judgment. The language of the ordinance and the employee handbook, however, establishes that there is no "for cause" condition limiting the plaintiffs' removal from their positions. The City ordinance provides in relevant part:

12

> A city officer may be removed from office by the council, if in the opinion of the majority of the council, the officer has failed to perform the duties of his/her office in an acceptable manner. Upon receipt of pre-termination notice, the officer has two (2) business days to respond in writing. The provisions in this section do not foreclose or bar any relief granted to the employee by another section under this Code.

[Doc. 50-24]. This City ordinance does not contain any language stating that the police chief may be removed only "for cause." Further, the employee handbook states:

> A pre-termination notice will be given to the employee by the Mayor or Vice Mayor specifying the reasons for the proposed termination. The employee will have two (2) business days to respond in writing to the reasons specified in the pre-termination notice and will be afforded an opportunity to appear before the Mayor or Vice Mayor with respect to the potential termination.

[Doc. 50-25]. The Court may also consider documents that were not attached to the complaint when they are referred to in the pleadings and central to Plaintiff's claims, and thus the Court may consider further excerpts from the City ordinances and employee handbook. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

Sec. 2-6 of the City's ordinance states that:

> A city officer may be removed from office by the council, if in the opinion of the majority of the council, the officer has failed to perform the duties of his/her office in an acceptable manner. Upon receipt of pre-termination notice, the officer has two (2) business days to respond in writing. The provisions in this section do not foreclose or bar any relief granted to the employee by another section under this Code.

[Doc. 50-24]. Also, "[t]he office of chief of police shall be filled by appointment by the city council; and the chief of police so appointed shall serve for a term of two (2) years or until removed by the city council in its discretion." *Id.* at Section 2-87. Lastly, the employee handbook states "[t]here are no contractual agreements between the City of Greenville and an employee after the initial 12 months of employment. The at-will nature of employment may not be modified except in writing signed by the Mayor." Doc. No. 53-5. These other ordinances and employee

handbook sections make even more clear the finding that no "for cause" condition limiting the plaintiffs' removal from their positions exists.

There is nothing in the pleadings that would demonstrate that the Plaintiffs could only be removed from their positions for cause, as the language does not afford either plaintiff with a property interest in his employment. Without a property interest in their employment, the substantive due process claims must be dismissed.

The Court now turns to the procedural due process claims of the Plaintiffs. A claim that an employer violated procedural due process during an adverse employment action requires that "(1) the plaintiff have a protected property interest in his employment, and (2) the termination of the interest was effected without the requisite procedural protections." *McDonald v. City of Corinth*, Tex., 102 F.3d 152, 155 (5th Cir.1996); *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir.1993). A plaintiff who is deprived of a significant protected property interest is entitled, depending on the circumstances, to either a pre-termination or post-termination hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The protected plaintiff must receive notice of the charges raised against him and be afforded an opportunity to respond. *Id*. at 545–46, 105 S.Ct. 1487.

Plaintiffs' procedural due process claims therefore depend upon having a property interest in continued employment with the City of Greenville, and the Court has already determined that Plaintiff Wilson and Plaintiff Merchant did not have a protected property interest in their employment. The Plaintiffs failed to allege anything to show that their positions within the City of Greenville were subject to a for-cause condition to removal. Although Plaintiffs have alleged that their removal from their positions were done without the requisite procedural protections, the Plaintiffs have not alleged that these were constitutionally protected interests. The failure to

provide a hearing, as required by the handbook, is not cognizable under Section 1983. Plaintiffs Fourteenth Amendment Due Process claims are therefore dismissed.

## V.      Count 5 - FMLA Violation

Plaintiff Merchant has alleged that the City of Greenville violated his rights under the Family Medical Leave Act ("FMLA") and that the failures of the City to make Plaintiff aware of his rights and responsibilities interfered with his ability to comply with the FMLA and/or return to work. Plaintiff Merchant has alleged that the Defendant City of Greenville essentially failed to provide any notice whatsoever of these rights as required under the FMLA, which left him unknowledgeable of his status, obligations, Defendant's expectations, time remaining, and returning to work requirements.

To establish a claim of FMLA interference, a plaintiff must show that: (1) he was an eligible employee, (2) the Defendant was an employer subject to the FMLA's requirements, (3) he was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, and (5) the Defendant denied him the benefits to which he was entitled under the FMLA. *Burris v. Brazell*, 351 Fed.Appx. 961, 963 (5th Cir.2009). Plaintiff Merchant has alleged the first four elements of an FMLA interference claim, with only the fifth appearing to be in dispute. It is unclear from the pleadings if Plaintiff Merchant was able to return to work at the conclusion of his FMLA leave, however, as discussed earlier, the Plaintiff has alleged he was unaware of what his options even were. Plaintiff Merchant alleges that if he had known about possible options to extend his covered leave, he would not have been forced to resign after his position was filled, thus not allowing him to be reinstated as required by the FMLA. The Court need not discuss the viability of Plaintiff Merchant's FMLA allegations, as the only question is whether a plausible claim has been asserted.

15

At this stage in the proceedings the Court finds that the FMLA claim or claims are at least plausible as alleged in the complaint and therefore, will deny Defendants' motion in this regard.

## VI.     Count 6 – Civil Conspiracy

Plaintiffs' Complaint asserts a claim for civil conspiracy. Under Mississippi law, a civil conspiracy requires showing: "(1) two or more persons or corporations; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result." *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 459 (5th Cir.2005) (quoting *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss.2004)).  Mississippi follows the rule of almost all jurisdictions in uniformly requiring that civil conspiracy claims be predicated upon an underlying tort that would be independently actionable. *Wells v. Shelter Gen. Ins. Co.*, 217 F.Supp.2d 744, 755 (S.D.Miss.2002).

The only torts mentioned in the complaint surrounding the civil conspiracy claim that the Plaintiffs have sufficiently pled are the torts of harassment and retaliation.  While the complaint does not specify the type of harassment and retaliation, the Court takes these to relate to the claims of hostile work environment based on sexual harassment, retaliatory hostile work environment, Title VII retaliation, and tortious interference with employment.

Plaintiffs have sufficiently stated the above listed claims, with the claims of tortious interference with employment being granted in part and denied in part, as discussed later in this opinion.  In connection with these claims, the plaintiffs have alleged that Defendant Banks, Vice-Mayor Wilson, Mayor Simmons, and Brock conspired together to assist or further the tort of hostile work environment based on sexual harassment.  Plaintiff Wilson has alleged that the individual defendants on the city council conspired with each other to retaliate for Wilson's EEOC charge by fraudulently fabricating and falsifying orders which led to his removal from his position.  Further,

16

Plaintiff Merchant has alleged that the individual defendants conspired to create a retaliatory or hostile work environment due to his filing of an EEOC charge. Lastly, Plaintiffs allegations also assert that the individual defendants conspired to tortiously interfere with the Plaintiffs' employment in multiple ways as discussed in this opinion, as the overall goal and agreement was to remove the Plaintiffs from their positions. While the Plaintiffs are not entirely clear in describing if all individual defendants or only some participated in each claim of civil conspiracy, the factual allegations taken as true all the civil conspiracy claims to remain viable at this stage of the proceedings.

## VII.    Count 7 - Breach of Contract

Plaintiff Wilson alleges that the City of Greenville terminated, either directly or constructively, his employment in violation of their contract. As the Court previously found, Plaintiff Wilson was an at-will employee, and even though his employment provided for a two-year term, he was still an at-will employee as he could be terminated with or without cause. The employee handbook, City ordinances, and Mississippi law all either directly or indirectly state that employees, such as Plaintiff Wilson, were employed on an at-will basis and that the City or employee may terminate the employment relationship at any time with or without cause. Regardless if Plaintiff Wilson had a fixed term contract, there has been nothing pled to show that the City of Greenville did not have an unfettered right to terminate. Plaintiff Wilson's factual allegations are insufficient to demonstrate that the Defendant City of Greenville breached a contractual duty owed to him.

## VIII.   Count 8 - Constructive Discharge

Both Plaintiffs appear to assert constructive discharge, alleging that they were forced to resign, with Plaintiff Wilson specifically alleging that he did not resign, but instead the record was

falsely altered to show that he resigned. As an initial matter, the Court finds that Plaintiff Wilson cannot make both assertions at once as they contradict each other; one allegation is that Plaintiff Wilson did not resign and the minutes were altered to show that he did, and the second assertion is that Plaintiff Wilson was compelled to not return to work, thus constructively discharged. Plaintiff Wilson seems to focus the complaint on the first assertion, that he in fact did not resign and Wilson does not go to the length of demonstrating how a constructive discharge occurred. Plaintiff Wilson's claims therefore are not dependent upon a finding of constructive discharge, and thus, the Court will not consider constructive discharge on behalf of Plaintiff Wilson.

Plaintiff Merchant, however, does specifically lay out a constructive discharge claim. Constructive discharge occurs when the employer has made conditions so intolerable that the employee feels compelled to resign. *Hoerner Boxes, Inc. v. Mississippi Employment Sec. Com'm.*, 693 So. 2d 1343, 1347 (Miss. 1997). As the Fifth Circuit has explained, "constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired." *Wells v. City of Alexandria*, No. 03–30750, 2004 U.S.App. LEXIS 8525, 2004 WL 909735, *3 (5th Cir. Apr.29, 2004). To determine whether a reasonable person would feel compelled to resign, the Court looks for the following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir.2001) (punctuation omitted). The plaintiff must prove "a greater degree of harassment than that required by a hostile environment claim." *Id.* Discrimination alone is insufficient to establish constructive discharge; there must be aggravating factors. *Id.*

18

To begin, Plaintiff Merchant has alleged that he was attempting to be forced out by Defendant Banks. It is further alleged that he was demoted two days after being promoted to chief of police, and that following this demotion his job responsibilities were continuously reduced. Merchant has alleged that he was given a new supervisor who the City knew held animosity against the Plaintiff. It is further alleged that his health declined due to the actions discussed throughout this Court's opinion and that his employer gave no notice of his protections under the FMLA claim, which while that is a separate claim, is relevant here. He also had what he believed and alleges was his position given to someone else as a result of the Defendants' actions, thus leaving him no other comparable employment to which he could return. Given the pleadings, the court finds there to be sufficient allegations to support a finding of constructive discharge.

## IX. Count 9 – Tortious Interference with Employment

The four elements of tortious interference with employment are:

(1) that the acts were intentional and willful;
(2) that they were calculated to cause damage to the plaintiffs in their lawful business;
(3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and
(4) that actual damage and loss resulted.

*Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of City of McComb City*, 760 So. 2d 715, 719 (Miss. 2000). Without having to repeat the entire factual section of this suit, the Court finds that Plaintiff Wilson has asserted a plausible claim of tortious interference with employment against all individual defendants except defendant Graise and defendant Turner, as Plaintiff Wilson has not made sufficient allegations of how they interfered with his employment. As to the other individual defendants, Plaintiff Wilson has stated that they intentionally took action(s) that were intended to cause harm to the Plaintiff's employment and done so for the purpose of causing harm,

or to cause Wilson to lose his employment. For example, Plaintiff Wilson has alleged that multiple defendants participated in the ongoing sexual harassment and in the fraudulent board minutes which falsely proposed that he resigned. The allegations further state that this was done without any valid reasoning, and the Court finds that Plaintiff Wilson has met the burden of alleging facts that support a plausible claim against the stated defendants.

Plaintiff Merchant's claim of tortious interference appears to be asserted against Defendant Banks, Simmons, Vice-Mayor Wilson, and Graise. Plaintiff Merchant, however, only makes threadbare general assertions against the remaining individual defendants on the board and those are not well taken for this claim. Again, without reiterating all facts leading up to this point in the Court's opinion, Plaintiff Merchant has alleged that the Defendants listed above acted tortiously whether through sexual orientation harassment, interfering with his FMLA leave, or his job duties. Defendant Merchant has alleged ongoing sexual harassment that Defendant Banks, Simmons, and Wilson (Vice-Mayor) participated in while acknowledging that his job was at risk. Defendant Graise is alleged to have had a personal vendetta against Plaintiff Merchant and reduced Merchant's job responsibilities interfering with the performance of his job. Given the standard at the motion for judgment on the pleadings stage of proceedings, the Court finds that Plaintiff Wilson and Merchant have alleged sufficient facts that would permit claims of tortious interference in the manner discussed above.

## X. Count 10 - Intentional Infliction of Emotional Distress

Both Plaintiffs have asserted a claim for intentional infliction of emotional distress due to the actions taken by the Defendants. In Mississippi, liability for claims of intentional infliction of emotional distress "does not extend to 'mere insults, indignities, threats, annoyances, petty oppression, or other trivialities.'" *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018)

(quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)). "[D]amages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes." *Raiola v. Chevron U.S.A., Inc.*, 872 So. 2d 79, 85 (Miss. Ct. App. 2004). "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Id.* (internal quotation marks omitted) (quoting *Prunty v. Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)).

While the Plaintiffs have alleged behavior, if proven, that is certainly improper, the Court does not find that even if every allegation was true the very high threshold required for an intentional infliction of emotional distress claim would be met. In order to recover in an employment dispute for a claim of intentional infliction of emotional distress, "the defendants' conduct must be wanton and willful, as well as evoke outrage or revulsion." *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018) (citing *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001)). Additionally, "[t]he severity of the acts should be such that they are atrocious and intolerable in a civilized society." *Id.* (citing *Speed*, 787 So. 2d at 630). The actions alleged, while wrong, do not reach the tall order of constituting "conduct ... 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).

## XI.   Count 11 - Negligent Infliction of Emotional Distress

"In order to recover emotional distress damages resulting from ordinary negligence, [a plaintiff] must prove 'some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably [foreseeable] to the defendant.'"

*Randolph v. Lambert*, 926 So.2d 941, 946 (¶ 17) (Miss. Ct. App. 2006) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1208 (¶ 40) (Miss. 2001)).

However, it is apparent to the Court that Plaintiffs' claims are barred by the exclusivity provision of the Mississippi Worker's Compensation Act ("MWCA"). "[F]or a tort claim against an employer to fall outside the MWCA . . . the actions of the employer [must go] beyond negligence, gross negligence, or recklessness." *Bowden*, 120 So. 3d at 976. In order to succeed on such a claim, the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee. *Id.* "[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the [MWCA].... Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the [MWCA]." *Blailock v. O'Bannon*, 795 So.2d 533, 535 (Miss.2001) (citing *Peaster*, 642 So.2d at 348–49). Plaintiffs' complaint asserts "reckless" conduct and the basis of the claim is negligence, thus the negligent infliction of emotional distress claims are barred by the exclusivity provision of the Mississippi Workers' Compensation Act and therefore the claims are dismissed.

### Conclusion

For the foregoing reasons, the Court finds that Defendants' Motion for Judgment on the Pleadings [53] is GRANTED IN PART and DENIED IN PART. A separate order in accordance with this opinion will issue this day.

This the 24ᵗʰ day of October, 2023.

SENIOR U.S. DISTRICT JUDGE